MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. GEORGE W. GRAVES.

Decided November 6, 1909.

**1.—Railroads—Injured Employee—Medical Attention—Rules and Regulations.**

In a suit by an injured employee against a railroad company for damages resulting from the negligence of the company in failing to promptly transport him to the company hospital and furnish him with medical treatment as by contract the company was bound to do, evidence considered and held to justify the court in refusing a charge requested by the defendant to the effect that if the company complied with its established rules for the government of its hospital department in the matter of transportation and medical treatment, to find for the defendant. Under the circumstances it was the duty of the defendant to exercise ordinary care to promptly furnish the plaintiff with medical treatment without regard to its hospital rules and regulations.

**2.—Same—Proper Charge.**

The issue being whether or not a railroad company had exercised reasonable diligence and care in furnishing an injured employee with medical attention, charge requested by the defendant company considered, and held to have properly grouped the facts which defendant was entitled to have specifically submitted to the jury and which if found to be true would have exonerated it from liability, and its refusal was, therefore, reversible error.

**3.—Depositions—Certificate of Officer—Insufficiency—Case Criticised.**

The caption to the deposition of a witness was as follows: "Pursuant to the attached commission and interrogatories, I, E. A. Boyd, a notary public within and for the county of Pittsburg, State of Oklahoma, summoned before me Dr. W. C. Graves, who being first duly sworn to testify the truth, the whole

truth and nothing but the truth, testified as follows:" then followed the answers of the witness to the direct and cross interrogatories, duly signed by him, to which the officer attached his jurat as follows: "Subscribed and sworn to before me this 5th day of September, 1908. My commission expires March 31, 1911. (signed) E. Allen Boyd." Attached to the deposition was the following certificate: "I, E. Allen Boyd, a notary public in and for Pittsburg County, Oklahoma, do hereby certify that the above named Dr. W. C. Graves, the witness whose name is subscribed to the foregoing depositions, was by me first duly sworn to testify the truth, the whole truth and nothing but the truth in the case mentioned in the caption, and that the deposition by him subscribed was reduced to writing upon a typewriter by me in the presence of said witness and the same was subscribed by him in my presence, said deposition being taken upon the attached direct and cross interrogatories and pursuant to the attached commission . . . (signed) E. Allen Boyd, Notary Public." Held, said deposition should have been quashed on motion on the ground that the officer before whom they were taken did not certify that the answers were sworn to before him by the said witness. Missouri, K. & T. Ry. Co. v. Hennesey, 20 Texas Civ. App., 316, held, not in accord with the decisions of the Supreme Court.

### 4.—Evidence—Expert—Inadmissible Opinion.

The testimony of one doctor that in his judgment the proper thing for another doctor to have done under particular circumstances when notified of an injury to his patient, was to go immediately and attend to the case, was not admissible as expert testimony.

### 5.—Evidence—Hearsay—Statement of Messenger.

What a messenger may report to the person who sent him on an errand is hearsay and incompetent evidence when repeated by the person who sent him.

### 6.—Same—Quoting Medical Authority.

One medical expert should not be permitted to testify to what another medical expert says upon a certain subject. Such testimony is hearsay.

### 7.—Charge—Withdrawal of Issues—Error.

When special charges are given, an instruction by the court to the jury to disregard all of the issues raised by the pleadings other than those "submitted in the preceding paragraphs of this charge" is improper in that it may cause the jury to disregard the special charges.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*Coke, Miller & Coke* and *Ramsey & Odell,* for appellant.—The court having in the sixth paragraph of its charge to the jury expressly withdrawn from the consideration of the jury all of the issues raised by the pleadings other than those submitted in the preceding paragraphs of that charge, and none of the issues raised by appellant's pleadings, save and except that of contributory negligence, having been submitted in the preceding paragraphs of the charge, said action was highly prejudicial to the appellant, and could not be cured by the submission of special charges covering some of said issues, for the reason that said paragraph of the court's general charge withdrawing said issues from the consideration of the jury was contradictory of said special instructions, confusing and misleading and highly prejudicial to the appellant. Baker v. Ashe, 80 Texas, 361; Taffinder v. Merrell, 45 S. W., 477; Houston & T. C. Ry. Co. v. Kimbell, 43 S. W., 1049; St. Louis S. W. Ry. Co. v. Gill, 55 S. W., 386.

If the appellant had in force and effect at the time appellee en-

tered its service, such a rule and regulation as that alleged, and it was believed by the jury to have been a reasonable one and to have been in force at the time of appellee's injury, such regulation will in law be held to constitute a part of the contract between appellee and appellant and binding upon appellee, and upon compliance therewith by appellant its duty to appellee in regard to the matters covered by the rule and regulations would be ended. Gulf, C. & S. F. Ry. Co. v. Moore, 98 Texas, 302; St. Louis S. W. Ry. v. Campbell, 30 Texas Civ. App., 35; Texas & P. Ry. Co. v. Pearl, 3 Texas App. Civ., 4, p. 19; Texas & P. Ry. Co. v. Bell, 13 Texas Ct. Rep., 190; Beauchamp v. International & G. N. Ry. Co., 56 Texas, 239; Gulf, C. & S. F. Ry. Co. v. Moody, 30 S. W., 574; Western U. Tel. Co. v. Neel, 86 Texas, 363; Chicago & A. Ry. Co. v. Randolph, 53 Ill., 511; Western U. Tel. Co. v. May, 27 S. W., 760; Western U. Tel. Co. v. McMillan, 30 S. W., 298; Western U. Tel. Co. v. Gibson, 53 S. W., 712; 3 Thompson, Negligence, 3104 to 3109; 2 Hutchinson, Carriers, sec. 1077, p. 1252.

In order to entitle the appellee to recover under the allegations in his petition, it was necessary for him to allege and prove that the delay in his removal to Hillsboro or the failure of appellant's local surgeon to go to Milford, was the proximate cause of the loss of his leg, and it being shown from the uncontradicted evidence that if Dr. Miller had gone to Milford or there had been no delay in the removal of appellee to Hillsboro, the treatment rendered appellee would have been the same as that in fact rendered, said delay could not have been the proximate cause of the loss of his leg.

The court erred in the seventh paragraph of its charge to the jury in instructing the jury that in estimating the plaintiff's damages they might take into consideration the value of the time lost during the period of his disability, if they found that he had been disabled, and that by reason thereof he had lost any time, because same is not limited to such disability as arose exclusively from the alleged negligence of the defendant, if any, and because it was conclusively shown from the uncontradicted evidence that the plaintiff received a serious injury which necessarily would have disabled him for some time, regardless of the alleged negligence of the defendant, and the failure of the court in said portion of said charge to limit the recovery of the plaintiff by reason of disability to such disability as was caused from such negligence of the defendant, was harmful and prejudicial error to the defendant. Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Texas Brew. Co. v. Dickey, 20 Texas Civ. App., 609; St. Louis S. W. Ry. Co. v. Smith, 63 S. W., 1064; St. Louis S. W. Ry. Co. v. Highnote, 74 S. W., 920; International & G. N. Ry. Co. v. Clark, 72 S. W., 584.

The certificate of the officer before whom the depositions of Dr. Graves were taken having failed to show that said depositions were sworn to by the witness, as required by the statute, said certificate was fatally defective, and appellant's motion to quash same should have been sustained. General Laws, 30th Leg., art. 2,284, p. 186-7; Patton v. King, 26 Texas, 687; Trammell v. McDade, 29 Texas, 360; Slaughter v. Rivenbark, 35 Texas, 68; Sabine & E. T. Ry. Co. v. Brousard, 69 Texas, 620; Wallace v Byers, 14 Texas Civ. App., 574; Bush v.

Barron, 78 Texas, 8; Emberson v. McKenna, 16 S. W., 419; McFaddin v. Sims, 43 Texas Civ. App., 599.

While expert testimony is admissible to prove the character of treatment which should be given a patient or the probable effect of the lack of such treatment, the opinion of such expert as to whether another physician should or should not have gone to see the patient under particular circumstances was inadmissible. German Ins. Co. v. Pearlstone, 18 Texas Civ. App., 706; Marshall v. McAllister, 54 S. W., 1068; Sonnefield v. Mayton, 39 S. W., 166; St. Louis & S. F. Ry. Co. v. Nelson, 20 Texas Civ. App., 536; Lipscomb v. Houston & T. C. Ry. Co., 64 S. W., 927; Half v. Curtis, 68 Texas, 642.

Testimony of the appellee as to statements made to him by the witness Beck as to all statements alleged to have been made to said witness by appellant's local agent at Milford, were hearsay and inadmissible. Western U. Tel. Co. v. Wofford, 42 S. W., 119; Clark v. Bohms, 37 S. W., 350.

The testimony of the witness Graves that, according to Koch, from a single germ in twenty-four hours more than eight million germs would develop, was hearsay and inadmissible. Burt v. State, 38 Texas Crim. App., 397.

*C. B. Stuart* and *Collins & Cummings,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—Appellee sued appellant to recover damages alleged to have been sustained by him on account of the loss of his leg as a result of the negligence of appellant in not using reasonable diligence to provide him with proper medical and surgical attention after he had received an accidental injury resulting in the fracture of the knee-cap of said leg. The petition alleged that on the 12th day of May, 1907, plaintiff was, and had been for some time, in the employ of the defendant in the capacity of chief clerk in its offices in the city of Hillsboro, Hill County, Texas, and that among other duties it was his duty, especially in the absence of the defendant's local agent at Hillsboro, in case of a wreck along defendant's line of railway, where the property of defendant was in danger of being damaged or destroyed, etc., to go to the scene of such wreck and assist in the preservation of its property; that on said 12th day of May, 1907, a serious wreck occurred on defendant's line of railway at Milford, a small station about fifteen miles north from Hillsboro, in which much of its property was damaged and destroyed; that the plaintiff on hearing of said wreck, defendant's local agent at Hillsboro being absent, went at once to Milford for the purpose of caring for the property of defendant, and while viewing the wreck from the top of a freight car which had been overturned, he received the injury to his knee. It was further alleged that at the time plaintiff entered the service of the defendant he entered into a contract with the defendant by the terms of which the defendant agreed, in consideration of its retaining fifty cents each and every month out of the plaintiff's salary for hospital fees and medical attention, that it would, in case of injury to or sickness of the plaintiff while in the discharge of his duties from any cause, immediately convey the plaintiff to a hospital or to a place

where he could receive proper medical and surgical attention; and that in case the plaintiff, by reason of any such injury or sickness, should be in such condition as that he could not be removed by the means at hand he should be placed in charge of the local agent and cared for until the arrival of the nearest local surgeon, whose duty it would then become to go immediately, equipped with necessary and proper apparatus and medicines to give plaintiff such medical and surgical attention as the injury or sickness should require; that plaintiff relied upon said contract and consented for the defendant to retain, and defendant did retain, each month for a period of five years while plaintiff was in its employ, including the month in which he was injured, fifty cents from his salary to defray the expenses of medical attention and treatment, etc., in the event he should become sick or injured; that immediately after receiving the injury mentioned he caused the defendant's local agent at Milford and its nearest local surgeon, Dr. J. W. Miller of Hillsboro, to be notified of his said injury and the necessity for immediate surgical attention. That notwithstanding it was only fifteen miles from Milford to Hillsboro, at which last-named place were situated competent surgeons and suitable surroundings for sanitary treatment, which were not available at Milford, Texas, and notwithstanding that defendant had idle engines and crews at Hillsboro, which it could have used either for the purpose of conveying the appellee to Hillsboro or for conveying its local surgeon and proper apparatus for performing the needful operation, it negligently refused to do either, and permitted the appellee to remain at Milford for a period of fifteen hours after receiving said injury without proper medical and surgical attention. That said delay was unreasonable and negligent, and as the direct result thereof sepsis set in and plaintiff's knee-cap and knee-joint became infected before any operation was performed upon the same, and because thereof it afterwards became necessary to, and he did, have his leg amputated near his hip joint, and that such operation would not have been necessary if he had received proper surgical attention within a reasonable time. The appellee further alleged that it was impossible for him to reach proper surgical attention by his own efforts, but that the appellant, in the exercise of ordinary care, could have conveyed the plaintiff to a place where he could and would have received proper surgical attention within a reasonable time, and that it could have sent its local surgeon from Hillsboro to Milford, where appellee was, who could and would have given him proper surgical attention within a few hours after his injury.

The defendant pleaded a general denial, and specially, that if the contract existed between it and the plaintiff, as alleged by him, the plaintiff, at the time of his injury, was not engaged in the discharge of any duty as an employe of defendant, and therefore not entitled to receive medical treatment; that if the contract existed it was expressly provided therein that when any injured employe was able to be moved he should be taken or sent to the nearest local surgeon in the direction in which the first train should be going, and the local surgeon notified of his coming and of the character of the injury, and that said contract was in all things complied with by the appellant;

that after appellee's injury he was properly attended at Milford by Dr. Rogers, a careful and skillful surgeon, by whom proper medical attention was rendered him at the expense of the appellant, and that he was thereafter removed from Milford to Hillsboro upon the first train going in that direction, and upon his arrival was properly attended by Drs. Miller and Davis, by whom he was given proper attention at the expense of the appellant, and that by reason thereof appellant had used reasonable and proper care to provide appellee with proper attention and treatment; that if under the terms of the alleged contract it was the duty of appellant's surgeon at Hillsboro to go to Milford to give attention to appellee, he was unable to go, and in the exercise of ordinary care could not have done so by reason of illness in his own family and the bad condition of the roads between Milford and Hillsboro; that if it became necessary to amputate appellee's leg, as alleged by him, that same did not arise from any alleged delay in his receiving medical attention, but by reason of natural or other causes wholly independent of such delay, and the appellant was in no wise responsible therefor; that same was due to his voluntary act in leaving the care and attention of Drs. Miller and Davis at Hillsboro shortly after said alleged injury and going from Hillsboro, a distance of more than two hundred miles, to McAlester, Oklahoma, with his leg in such a dangerous and serious condition as it was by reason of said alleged injury, and that his act in so doing constituted contributory negligence which was the proximate cause of the loss of his leg; that if plaintiff was caused to suffer great mental and physical pain by reason of lack of attention at Milford, as alleged by him, the same was caused by and due to his own negligence in failing to request such attention which was the proximate cause of any such suffering.

It is undisputed that appellee was accidentally injured as alleged; that appellant's local surgeon at Hillsboro, Dr. Miller, was shortly thereafter notified of his injuries and did not go to Milford and dress and treat the wound; that Dr. Rogers did visit plaintiff at Milford very soon after he was hurt and gave the wound a temporary dressing; that appellee was carried from Milford to Hillsboro on the morning after his injury upon the first train running from Milford to Hillsboro, and at his request was taken to the sanitarium of Dr. C. C. Davis. A jury trial resulted in a verdict and judgment in favor of appellee for the sum of $12,500, and the appellant has appealed the case to this court.

It is assigned that the trial court erred in refusing to instruct the jury as requested by appellant, that "Under the rules and regulations of the defendant for the government of its hospital department in force at the time of plaintiff's alleged injury, and at the time of plaintiff's employment by the defendant, it was provided that in the event an injured employe was able to be moved, he should be taken or sent to the nearest local surgeon in the direction in which the first train should be going, and the local surgeon notified of his coming and the character of his injury; and it being shown from the uncontradicted evidence in this case that after the receipt of his alleged injury, the plaintiff was able to be moved, and that he was taken to Hillsboro, where the nearest local surgeon of the defendant resided, upon the

first train moving in the direction of Hillsboro, and defendant's local surgeon notified of his coming and the character of his injury, you are therefore instructed that insofar as the plaintiff seeks to recover for the alleged negligence of the defendant in delaying sending him from Milford, Texas, to Hillsboro, Texas, you will find for defendant." This charge seems to have been requested in view of a rule of the appellant for the government of its hospital department to the effect that when an injured employe is able to be moved, "take or send him to the nearest local surgeon in the direction in which the first train is going; notify the surgeon of his coming and the character of his injuries," and testimony tending to show that this rule had been complied with in this case. We are not prepared to hold that the charge, under the facts, should have been given. The accident alleged happened about six o'clock in the afternoon of May 12, 1907, and appellee was not carried to Hillsboro, where appellant's nearest local surgeon resided, until the next morning about six or eight o'clock; nor does it appear that appellant made any effort to have appellee conveyed to Hillsboro until that time, notwithstanding it had an engine at hand south of the wreck upon which he might have been taken to that place within two or three hours after the accident occurred. We are inclined to think that under the circumstances shown it was appellant's duty, notwithstanding the rule governing its hospital department above referred to, to exercise ordinary care to have appellee carried to Hillsboro within a reasonable time after he received the injury described in his petition, or to have provided him with as skillful surgical treatment at Milford as he would have received at Hillsboro, and that inasmuch as the requested charge failed to impose such duty upon it there was no error in refusing it.

The fifth assignment of error complains of the refusal of the court to give the following charge, requested by appellant: "It is shown from uncontradicted evidence that under the rules and regulations of the defendant for the government and regulation of its hospital department, in force at the time of plaintiff's injuries, employes of the defendant who were able to be moved should be taken or sent to the nearest local surgeon in the direction in which the first train should be going and the local surgeon notified of his coming and the character of his injury, and that plaintiff, after receiving the injury complained of in this case, was able to be moved and was brought to Hillsboro, where the nearest local surgeon of the defendant resided, on the first train moving in the direction of Hillsboro, and the local surgeon notified of his coming and the character of his injury; and if you believe that said rule and regulation was a reasonable one, and that the plaintiff received from Dr. Will Rogers at Milford proper attention, and such as would have been given by a careful and competent physician and surgeon in the exercise of ordinary care, prior to the time of his removal to Hillsboro, and that after the arrival of the plaintiff in Hillsboro the operation performed by Drs. Davis and Miller was performed within a reasonable time, or that they exercised ordinary care to do so, then and in such event you will find for the defendant." We are of the opinion this charge was applicable to the

facts, and its refusal, error. The charge correctly states the rule of appellant in force at the time appellee entered its services and for a long time prior thereto, and continuously up to the time of his injury, and there was testimony from which the jury would have been warranted in concluding that the rule was a reasonable one, and that appellee received at the instance of appellant prompt and proper medical attention at Milford after he was hurt, in the services rendered by Dr. Will Rogers; that Dr. Rogers was a careful and competent physician and surgeon, and that his treatment of appellee before his removal to Hillsboro was such as he would have received at the hands of Dr. Miller, appellant's local surgeon at Hillsboro, had he gone to Milford when notified of appellee's injury and treated him in person. It was also shown without contradiction that appellee was in fact carried from Milford to Hillsboro after he received his injury on the first train of appellant going there, and that within a reasonable time after he arrived at Hillsboro appellant's local surgeon, Dr. Miller, in conjunction with Dr. Davis, attended appellee and performed an operation upon him which appellee admits was proper and skilfully done. Dr. C. C. Davis testified that if the antiseptic preparations of Dr. Rogers were thorough, that the temporary treatment given appellee was the proper temporary treatment to give that kind of a wound; that if appellee had been brought to his sanitarium in the night in the condition in which he found him next day, with his wound dressed as he found it dressed, he would have postponed the operation until daylight. It would seem that the special charge grouped facts which appellant was entitled to have specifically submitted to the jury, and if found to be true were sufficient to exonerate it from liability. Neither the general charge nor any special charge given by the court, all of which we have carefully considered, sufficiently enumerated the particular facts and submitted for the consideration of the jury the phases of the case presented in the special charge under consideration.

On the trial of the case appellee offered in evidence the deposition of Dr. W. C. Graves, taken before a notary public in and for Pittsburg County, Oklahoma. The depositions of this witness were not filed until after the trial begun, and when offered in evidence counsel for appellant objected to the admission of the same, and by motion in writing moved to quash said depositions on the ground that the officer before whom they were taken did not certify that the answers were sworn to before him *by said witness*. Both the objection to the admission of the testimony and the motion to suppress the depositions were overruled and the same admitted in evidence, to which action of the court proper exception was reserved by appellant and the same is here assigned as error. The testimony of this witness was most material. It covered fully his treatment of the appellee from the time of appellee's arrival at McAlester, and his opinion as an expert to the effect that the amputation of appellee's leg resulted from delay in the performance of the operation performed by Drs. Davis and Miller at Hillsboro, and other material features of the case. The caption of the depositions, omitting the style of the case, is as follows: "Pursuant to the attached commission and interrogatories, I, E. Allen Boyd, a notary public within and for the county of Pittsburg, State

of Oklahoma, summoned before me Dr. W. C. Graves, who being first duly sworn to testify the truth, the whole truth and nothing but the truth, testified as follows:" The answers to the direct interrogatories then follow in consecutive order, and are signed, "W. C. Graves, witness," with the following jurat of the officer, "Subscribed and sworn to before me this 5th day of September, 1908. My commission expires March 31, 1911. E. Allen Boyd." The answers to the cross-interrogatories then follow in consecutive order, and are signed, "W. C. Graves, witness," followed by a jurat identical with that last quoted, and there is then attached to the depositions the following certificate: "State of Oklahoma, Pittsburg County. I, E. Allen Boyd, a notary public in and for Pittsburg County, Oklahoma, do hereby certify that the above-named Dr. W. C. Graves, the witness whose name is subscribed to the foregoing depositions, was by me first duly sworn to testify the truth, the whole truth and nothing but the truth in the case mentioned in the caption, and that the deposition by him subscribed was reduced to writing upon a typewriter by me in the presence of said witness, and the same was subscribed by him in my presence, said depositions being taken upon the attached direct and cross-interrogatories, and pursuant to the attached commission, and the same were taken on the 5th day of September, 1908, between the hours of ten o'clock in the forenoon and six o'clock in the afternoon, at the office of Boyd & Moore, at 108½ East Choctaw avenue, in the city of McAlester, Pittsburg County, Oklahoma; that neither plaintiff nor defendant was present during the examination of the witness in person or by attorney; that I am not related to, nor attorney for either of said parties, nor otherwise interested in the outcome of the action. I so certify My commission expires March 31, 1911. E. Allen Boyd, Notary Public."

Our statute provides, and it is well settled by the decisions construing the same, that the certificate of the officer taking a deposition, either alone or considered in connection with the caption thereto, must show that the *answers* of the witness to the interrogatories and cross-interrogatories were signed and sworn to *by the witness* before such officer. Does it appear from the certificate, or from the caption and certificate in this case, that this requirement has been complied with? Under the decisions of the courts in this State we think the question must be answered in the negative. (Chapman v. Allen, 15 Texas, 282; Carroll v. Welch, 26 Texas, 147; Slaughter v. Rivenbark, 35 Texas, 68; Sabine & E. T. Ry. Co. v. Brousard, 69 Texas, 617; Bush v. Barron, 78 Texas, 8; Emberson v. McKenna, 16 S. W., 419; McFadden v Sims, 43 Texas Civ. App., 598.) In the case of Railway Company v Brousard, *supra,* Judge Stayton, in writing the opinion of the Supreme Court, says: "The only way in which it can be known that what appears to be the answers of a witness taken through interrogatories and a commission within the meaning of the law, are such answers, is by the certificate of the officer to the fact that the answers of the witness were signed and sworn to by the witness before him. That which is thus verified becomes evidence; but no statement made by the officer that matters appearing as the answers, which does not show that they become so by the fact that the witness signed and swore to

them before the officer, can be received.  If we take what is stated in the caption to the deposition of Bradley Johnson and attach it to the certificate of the officer which follows, it will stand thus: 'Answers of Bradley Johnson to direct interrogatories in the above suit.  I, G. W. Paine, a justice of the peace in and for precinct No. 3, and ex-officio notary public of said county and State, do hereby certify under my hand and official seal that the foregoing answers were made, subscribed and sworn to before me at Sabine Pass, Jefferson County and State of Texas, on this fourth day of April, A. D. 1887.'  From this it may be suspected that the answers were signed and sworn to by Bradley Johnson.  But this is not enough; it must appear through the officer's certificate that this is true, or the depostion should be rejected."

In Bush v. Barron, cited above, the certificate of the officer was as follows: "Sworn to and subscribed before me this August 25, A. D. 1887.  John H. Smith, Justice of the Peace, Ellis County, Texas."  The caption was, "Answers to interrogatories propounded by plaintiff to Joe Barron, a resident of Ellis County, Texas."  The Supreme Court, in holding the certificate in this case insufficient, said: "This (caption) does not, when read in connection with the certificate, show that the answers were signed by the witness before the officer."

In Emberson v. McKenna, *supra,* the caption, after stating the style of the case, is as follows: "Answers of interrogatories of S. E. Hartline in a suit pending in County Court of Grayson County, Texas, March term, 1888.  Interrogatories to S. E. Hartline."  The certificate is as follows: "The State of Texas, county of Hunt.  Before me, A. D. Jackson, a notary public in and for Hunt County, on this day personally appeared before me S. E. Hartline, and after being duly sworn according to law, answered on oath the within interrogatories and cross-interrogatories, and says they are true and correct to the best of his knowledge and belief.  Sworn to and subscribed before me this the 7th day of March, 1888.  A. D. Jackson, Notary Public, Hunt County, Texas."  In passing upon the sufficiency of this certificate the court, among other things, said: "The certificate does not state that the answers were signed and sworn to by the witness before him."

Again, in the case of McFadden v. Sims, 43 Texas Civ. App., 598, the certificate to the depositions was in this language:  "State of Kansas, county of Montgomery.  I, the undersigned, Walter Zeigler, a notary public in and for the county of Montgomery, State of Kansas, do hereby certify that Harry Nolte was by me first duly sworn to make the answers to the above and foregoing direct and cross-interrogatories, and that his answers as given were reduced to writing, and that the same were subscribed and sworn to by said witness."  The objection urged was that the certificate did not show that the answers of the witness were sworn to and subscribed by him before the officer taking the same.  It was held that notwithstanding the certificate recited that the witness was sworn by the officer taking the deposition before the interrogatories were propounded to him, and his answers thereto were reduced to writing, and were subscribed and sworn to by him, still the same was not equivalent to a statement, as required by the statute, that

the answers of the witness were signed and sworn to by him *before said officer,* and therefore the certificate was fatally defective.

We are of opinion that the certificate in the present case is no more definite and certain with respect to the requirement of the statute that it shall show that the answers of the witness to the interrogatories were sworn to by the witness before the officer taking said answers than the certificates in the cases cited were with respect to the defect pointed out in each of them. That the statement in the caption in this case, to the effect that the witness Graves was "first duly sworn to testify the truth, the whole truth and nothing but the truth," was not a sufficient compliance with the statute requiring the certificate to show that the answers of the witness were sworn to by him, is affirmed in the cases of Emberson v. McKenna and McFadden v. Sims, *supra;* and that it no more certainly appears that the witness Graves swore to the answers objected to in the case at bar than in the case of Railway Company v. Brousard, seems very clear. In the latter case the caption shows that the answers sought to be introduced in evidence were the answers of Bradley Johnson, whose deposition the officer was directed by the commission to take, and notwithstanding the officer certifies, "that the foregoing answers (Bradley Johnson's answers) were made, subscribed and sworn to before him," yet the Supreme Court said it could only be suspected that said answers were signed and sworn to by Bradley Johnson, which was not enough to authorize the admission of the depositions. If it could not be said that it appears by necessary implication from the language of the captions and certificates used in this and other cases cited above, that the respective answers of the witnesses to the interrogatories propounded were sworn to by said witnesses, we are unable to perceive how it can be said that it does so appear from the language used in the caption (and certificate) in question that Dr. W. C. Graves swore to the answers introduced in evidence in this case and of which complaint is made. Appellee cites the case of Missouri, K. & T. Ry. Co. v. Hennesey, 20 Texas Civ. App., 316, in support of his contention that the certificate here in question, when read in connection with the caption, shows a substantial compliance with the statute, which is all that is necessary. The case apparently sustains this view, and if it does it is, in our opinion, contrary to the decisions made by our Supreme Court in the cases cited in this opinion, wherein very similar certificates were construed and held to be fatally defective. In such case we conceive it to be the duty of this court to follow the ruling of the Supreme Court even though we might have reached a different conclusion had the question been presented to us as an original proposition.

The twenty-first assignment is to the effect that the court erred in admitting in evidence, over the objection of the defendant, the testimony of the witness, Dr. B. H. Vaughan, that, assuming that a surgeon whose duty it was to attend to the case was informed immediately, or very soon after the accident, that appellee's knee had been severely injured and the patella badly broken, in his judgment the proper thing for the surgeon to do would be to go immediately and dress and treat the case. The admission of this testimony, we think, was material error. One of the important issues in the case was whether or not appellant's local surgeon at Hillsboro, Dr. Miller, upon receiving notice

of appellee's injury shortly after the accident, should, in the exercise of ordinary care, have gone to Milford and treated the case in person, and the affirmative of this issue could not be established under the facts of this case by the opinion of an expert witness. As argued by counsel for appellant, while expert testimony is admissible to prove the character of treatment which should be given a patient or the probable effect of the lack of such treatment, the opinion of such expert as to whether another physician should or should not have gone to the patient under particular circumstances, was inadmissible. The practical effect of the testimony objected to was to tell the jury that, in the opinion of the witness, it became the duty of Dr. Miller, when he was notified that appellee had been hurt, to go to Milford and dress and treat his wounds. Whether he should have done so was not the subject of expert testimony, and the opinion of Dr. Vaughan as to what he should have done in this respect, should have been rejected by the court.

We are also of the opinion that the court erred in permitting the plaintiff, George W. Graves, to testify, over the objection of appellant that the testimony was hearsay, that in reply to messages sent to appellant's local agent at Milford, Charles Beck told him, plaintiff, shortly after he was injured, that he, said agent, would have a train out from Hillsboro at nine o'clock that night and take him to Hillsboro; that after he failed to get out at nine o'clock he had Mr. Beck make anywhere from three to six trips to the agent, and that in response to messages sent to the agent by Beck on these trips Beck told him that the agent said "they would have a train, and that it should have gone;" that he said, "We will have a train stopped at a certain street and give four blasts of the whistle and wait until he (plaintiff) can be carried on the cot; that he had gone to his house and got the cot to put him on early in the evening." The testimony of the witness Beck to the effect that, at the request of appellee, he had notified the agent at Milford of appellee's injury, was admissible, but the testimony objected to and quoted above was clearly obnoxious to the objection that it was hearsay, and being material, its admission must be regarded as hurtful to appellant's rights.

The court also erred, we think, in permitting the witness, Dr. W. C. Graves, after stating that a compound comminuted fracture not receiving proper attention for a period of fifteen hours would be a great deal more likely, if not practically certain, to become infected, and, by reason of the weakened condition of the patient, render him more easily a prey to septic germs, and that these germs multiply rapidly in a proper soil like blood and serum, and to further state: "So that from a single germ, according to Koch, in twenty-four hours more than eight million would develop; they divide themselves by fission once every hour." This testimony was subject to the objection urged, that it was hearsay. The statement of the witness does not purport to be an expression of his own opinion or knowledge of the subject upon which he is speaking, but that of the person Koch. The question is practically the same as would have been raised had appellee read the statement made by the witness from some medical treatise or standard work on medical jurisprudence, and that the reading of such an excerpt would not have been admissible seems to be well established. (St. Louis, A. & T. Ry. Co. v.

Jones, 14 S. W., 309; Boehringer v. Richards, 9 Texas Civ. App., 284; Galveston, H. & S. A. Ry. Co. v. Hanway, 57 S. W., 695; Lawson, Expert & Opinion Evid., p. 205; Burt v. State, 38 Texas Crim. Rep., 397; Gulf, C. & S. F. Ry. Co. v. Farmer, 108 S. W., 729.) We think the testimony upon the objection of appellant should have been excluded.

There are a number of assignments which have not been discussed, none of which in our opinion point out reversible error. Those relating to special charges asked by the appellant and refused were, we think, sufficiently covered by the court's main charge and other special charges given. Those complaining of the court's main charge probably disclose no reversible error, or if so, they are not likely to occur upon another trial. The paragraph relating to the measure of damages, when the entire language thereof is considered, is not perhaps subject to the criticism urged against it, but we suggest that the portion thereof authorizing the jury, in the event they find for plaintiff, to take into consideration the value of the time lost by him during the period of his disabilities, upon another trial be made to more accurately and with greater certainty apply to the time lost by reason of injury suffered subsequent to the infliction of the original wound, as a result of appellant's negligence, if any. We also think the paragraph instructing the jury that all other issues raised by the pleadings other than those submitted are withdrawn from their consideration, should, to avoid any probability of misleading the jury, be omitted.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*