CLYDE BURLISON v. BERRYMAN HENWOOD, Trustee in charge of and operating the St. Louis Southwestern Railway Company, a Corporation, Appellant.—No. 38687.—177 S. W. (2d) 432.

Division Two, December 6, 1943.

Rehearing Denied, January 3, 1944.

Motion to Transfer to Banc Overruled, February 7, 1944.

*Langdon R. Jones* for appellant.

*Bradley & Noble* and *W. L. Proffer* for respondent.

WESTHUES, C.—Plaintiff obtained a judgment in the sum of $3,000.00 against appellant railway company for an alleged breach of contract to provide medical care. An appeal was taken to the Springfield Court of Appeals where the judgment was affirmed. One of the judges dissented, and, deeming the majority opinion to be in conflict with controlling decisions of the Supreme Court, asked that the case be certified to this court for adjudication. See Burlison v. Henwood, 171 S. W. (2d) 313.

Appellant earnestly insists that the evidence was insufficient to sustain a verdict for plaintiff. This requires an examination of the record. We will relate the facts as favorably to plaintiff as the evidence warrants. Plaintiff lived in Hornersville, Missouri, and had been employed by the railway company for many years. He paid a stipulated sum, i. e., $1.25 monthly, to a hospital trust established by the defendant for the benefit of its employees. The details of this trust may be learned by reading the opinion of the court of appeals.

The trust agreement provided in substance that in case of injury an employee was entitled to medical and hospital services. In his brief, plaintiff states, ''Plaintiff's cause of action was founded on the failure of defendant to render him prompt and necessary medical and surgical treatment under its contract and obligation which resulted in infection and loss of use of his right hand.'' On the night of October 26, 1940, plaintiff and a man named Roberts had some difficulty. Roberts went to the home of plaintiff, and when plaintiff opened the door, both Roberts and plaintiff fired shots. Roberts had a shot gun and plaintiff was shot in both hands and seriously injured. Dr. Cope, who was the company's district surgeon, could not be reached so plaintiff called a Mr. Kershon, who was either a doctor or druggist [the evidence not being certain on this point], and he treated and dressed plaintiff's hands. He advised plaintiff that since his hands were badly injured and he had lost so much blood to drink some liquor as a stimulant and to reduce the pain. Thereafter plaintiff sent Walter Lomack to Sharpmack, who was plaintiff's foreman, for a pass over defendant's morning train out of Paragould, Arkansas, to Texarkana, Arkansas, the location of the company's hospital. About 3:30 A. M. on the 27th, Edward Snider and his brother, Walter Snider, took plaintiff to Paragould. They had received an order for a pass from Sharpmack at a filling station in Hornersville. The Sniders and plaintiff were in a car when Sharpmack delivered the order and he had an opportunity to observe that plaintiff had his hands bandaged and was unable to use them. At the depot in Paragould the Sniders presented the order for a pass to the agent, and later the agent went out to where plaintiff was, noticed his condition, and made the statement that plaintiff ought to have a helper to go with him because he was in no condition to travel alone. The agent asked Edward Snider if he could go with Burlison and we quote his testimony as to what the agent said at that time:

''Q. I will ask you to state if you heard the depot agent make a statement about a helper for Clyde Burlison?

''A. He asked if either one of us was going with him and I told him I had to work tomorrow, and he said he had to have someone go with him. That he couldn't go like that.''

After the agent made that statement plaintiff informed the Snider boys that if he had to die he wanted to die at home, and asked them to take him home. This occurred about an hour or so before the train arrived. Thereafter, and before the train reached the depot, the Sniders took plaintiff back to Hornersville. There another call was made for Dr. Cope, who responded promptly to the call and treated plaintiff at about 9:30 or 10 o'clock that morning. Dr. Cope found the bone of plaintiff's finger (which was later amputated) had been shot in two and much soft tissue was gone, and three or four fingers were fractured. He gave plaintiff a tetanus shot, cleansed his wounds thoroughly with alcohol, and put antiseptic dress-

ings on both hands. The doctor stated that he made a careful examination of the wounds and thought it best not to remove the shot at that time. He visited plaintiff again in the afternoon and also in the evening, and arranged for a helper to go with Burlison to Texarkana the next morning at 5:58, there being only one train a day. Plaintiff testified that when he arrived at the hospital the chief surgeon informed him that he had gotten there just twenty-four hours too late for infection had set in. Plaintiff was treated at the hospital, where later one of his fingers was amputated. His right hand was disfigured and the use thereof permanently impaired.

It was incumbent on plaintiff to show that the contract sued upon was breached, i. e., that the defendant's agents and servants were negligent, and further that such negligence caused plaintiff injury. To sustain this burden plaintiff in his brief states, "There was evidence that there were hospitals within one hour's traveling distance at Kennett, Missouri, Paragould, Jonesboro and Blytheville, Arkansas. The rules provided that in emergencies, a local hospital could be used." It will be remembered that plaintiff and the Snider boys were in Paragould a few hours after plaintiff had been shot, and he had not been treated at that time by the company's doctor. At no time did he make any request to be treated at a local hospital, but he returned to Hornersville and called Dr. Cope.

Plaintiff also asserts that it was the fault of the defendant that he was delayed twenty-four hours in getting to the general hospital at Texarkana. Plaintiff was as well acquainted with the rules of the hospital trust as the station agent or his foreman. He knew he was entitled to a helper if one was necessary. The station agent at Paragould asked if either of the Snider boys could go with him but they excused themselves, yet plaintiff in his brief says, "The agent did not offer to provide a pass ▮▮▮ for either of the Snider boys to accompany plaintiff and either would have gone had a pass been issued." We have heretofore quoted Edward Snider's evidence on this point, which sufficiently refutes plaintiff's argument. Plaintiff did not attempt to get on the train alone and he did not request to have a pass issued for a helper. It seems to us that the agent's question was nothing more than a suggestion to the Snider boys that one of them should go, and they refused. Plaintiff also testified that he knew the conductor was in charge of the train, and he, and not the agent, had the right to say whether plaintiff could board the train alone.

Plaintiff asserts that Dr. Cope failed to remove the shot from his hands. The record is barren of any evidence tending to show that proper treatment by Dr. Cope required the removal of shot. In fact, many of the shot were not removed when plaintiff was undergoing treatment at the hospital. No complaint is made that plaintiff was not properly treated at the hospital. Dr. Baldwin, testifying for plaintiff, stated that infection often develops in gun shot wounds.

despite adequate treatment. We cannot say, and a jury would not be authorized to say that Dr. Cope was negligent in the treatment of plaintiff without evidence to support such a finding.

Plaintiff in his brief quotes the following from 13 C. J., p. 637, "It is not sufficient that the party shall have exercised ordinary care to perform, but nevertheless failed. So the fact that a party has acted in good faith and exercised due diligence will not excuse delay." That rule would have to be applied in this case if the defendant is to be held liable. Again plaintiff says, "That the delay in getting plaintiff to a hospital constituted a breach of the contract sued upon for which defendant is liable has been passed on by the West Virginia Supreme Court of Appeals in Long v. Babcock Lbr. & Boom Co., 95 W. Va. 477, 121 S. E. 494, 33 A. L. R. 1187." In the West Virginia case, Wilfong, an employee in a lumber camp, was stricken while at work, about 9 A. M. with ptomaine poisoning. He was left in a caboose without medical care until 6 o'clock that evening, when he was taken to a hospital, where he died. The lower court overruled a demurrer to the petition. The appellate court held the petition good because it was a question of fact whether the delay was unreasonable. The West Virginia case does not sustain plaintiff's contention. All it holds is that the defendant was bound to furnish plaintiff transportation to a hospital within a reasonable time or to provide medical care within a reasonable time. The quotation from Corpus Juris is not applicable to the case at hand. Certainly the defendant in this case was not a guarantor in the sense that it was bound to cure plaintiff, or to guarantee that infection would not set in. Defendant performed its contract if it exercised due diligence and reasonable care in the treatment of plaintiff. Under such a contract if transportation to a hospital is necessary, due diligence in furnishing such transportation within a reasonable time is all that is required. See M.-K.-T. Ry. Co. v. Graves, 57 Texas Civ. App. 395, 122 S. W. 458; also the West Virginia case supra. A reading of the cases in the annotations in 33 A. L. R. 1191, cited by plaintiff, will disclose that under a contract as sued upon in this case it is the duty of the obligor to exercise only ordinary care and diligence in furnishing medical care, and as to the question of adequate medical treatment, that is to be measured by the same rules as applicable to malpractice cases. In the instant case when the company's local doctor was called he responded promptly and treated plaintiff. There was no evidence that he was negligent in his treatment. Plaintiff was furnished transportation to a hospital on the first train leaving Paragould after he was treated by Dr. Cope. It clearly was not the fault of the defendant that plaintiff did not have a helper to go with him the first time he went to the depot to catch a train. He complains of not being sent to a local hospital, yet he was in Paragould a few hours after he was injured and did not apply to that hospital or request to be taken there.

We are of the opinion that the evidence wholly failed to show any negligence on the part of the defendant's agents and servants, and that it was insufficient to sustain a finding that the defendant had breached its contract. Judgment is reversed. *Bohling* and *Barrett*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.